**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Karin R.,<br><br>Plaintiff,<br><br>v.<br><br>Frank Bisignano, Commissioner of Social Security,<br><br>Defendant. | Case No. 25-cv-3036 (SRN)<br><br><br><br>**ORDER** |

---

Edward A. Wicklund, Olinsky Law Group, 250 S. Clinton St., Ste. 210, Syracuse, NY 13202, and Asha Sharma, Olinsky Law Group, 2579 Hamline Ave. N., Suite C, Roseville MN 55113, for Plaintiff

Rylan L. Smith, Social Security Administration, 6401 Security Blvd., Baltimore, MD 21235, for Defendant.

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Karin R. seeks judicial review of a final decision by the Defendant Commissioner of the Social Security Administration denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The matter is now before the Court on Plaintiff's Brief [Doc. No. 21],[1] Defendant's Brief [Doc. No. 23], and Plaintiff's Reply [Doc. No. 24].

This case has a long and complicated procedural history, resulting in an administrative record of nearly 7,500 pages. The present case is the third appeal to this

[1] As of December 1, 2022, Social Security Actions under 42 U.S.C. § 405(g) are "presented for decision on the parties' briefs," rather than summary judgment motions. Supp. R. Soc. Sec. 5.

Court; the first two resulted in remand and rehearing before an Administrative Law Judge ("ALJ"), followed by another appeal to this Court.[2] Notwithstanding the length and complexity of the litigation, the issue for determination at this time is limited. Plaintiff seeks reversal of the Defendant Commissioner's decision denying her application for benefits, asserting that the decision of the ALJ is not supported by substantial evidence in the record. Plaintiff asserts that the ALJ misevaluated testifying medical expert Dr. Michael Lace's opinion about how Plaintiff's chronic pain syndrome might interact with and aggravate her mental health issues. This aggravating effect, according to Plaintiff's characterization of Dr. Lace's opinion testimony, could be predicted to cause absenteeism of up to three days per month—absenteeism so frequent that it would render Plaintiff unemployable and hence "disabled" within the meaning of the Social Security Act. Plaintiff argues that the misevaluation of Dr. Lace's opinion led the ALJ to inaccurately describe Plaintiff's residual functional capacity ("RFC"), which in turn resulted in an erroneous denial of benefits. Because Plaintiff maintains that her disability is clearly shown by the record, she requests that the Court reverse and remand solely to instruct the Commissioner to calculate and award benefits. (Pl.'s Br. at 2.) In the alternative, Plaintiff seeks remand for further proceedings. (*Id.*)

Defendant contends that substantial evidence supports the ALJ's findings and therefore requests that the ALJ's finding of no disability be affirmed. (Def.'s Br. at 1, 12.)

---

[2] Plaintiff's first appeal is case number 20-cv-1994 (TNL). The second is case number 24-cv-0004 (LIB).

At an earlier stage of this litigation, the Commissioner found that Plaintiff became disabled on November 15, 2021, and has remained disabled continuously since then. (Administrative Record ("R.") 6821.)[3] Pursuant to that finding, Plaintiff is currently receiving benefits with November 15, 2021 as the disability onset date. (R. 6735.) Plaintiff now seeks benefits for the period from the date she alleges that she became disabled, October 1, 2015, to the date on which the Commissioner agrees with her that she was disabled and entitled to benefits, November 15, 2021. (R. 6701.)

For the reasons set forth below, the Court finds that the ALJ's decision is supported by substantial evidence on the record as a whole and denies Plaintiff's request for relief.

## I. BACKGROUND

People with disabilities can qualify for financial support from the Social Security Administration ("SSA") through one or both of its assistance programs: the DIB Program under Title II of the Social Security Act and the SSI Program under Title XVI of the Act. *See Smith v. Berryhill*, 587 U.S. 471, 475 (2019). The DIB program provides support to those who worked and had sufficient social security taxes withheld from their pay over their working life to qualify for coverage if they became disabled. *See id.*; 42 U.S.C. § 423(a) (guaranteeing benefits for insured disabled people). The SSI Program is a public assistance program that provides support to people with disabilities, whether or not they have paid social security taxes, who demonstrate financial need. *See Smith*, 587 U.S. at

[3] When citing the Administrative Record, the Court refers to the black numbers in the lower right of each page. The Administrative Record is found at Doc. Nos. 9 (pp. 1–854), 9-1 (pp. 855–1910), 9-2 (pp. 1911–3573), 9-3 (pp. 3574–5491), 9-4 (pp. 5492–7009), and –5 (pp. 7010–7416).

475; 42 U.S.C. § 1381a (guaranteeing support to eligible "aged, blind, or disabled" people); 20 C.F.R. § 416.110 (explaining program's purpose).

**A. Procedural History**

Plaintiff applied for DIB on April 5, 2018 and for SSI on April 25, 2018 (R. 569), asserting that she had become disabled within the meaning of the Social Security Act on October 1, 2015 (R. 560, 569). Plaintiff claimed impairments of asthma, irritable bowel syndrome, chronic gastritis and gastro-esophageal reflux disease, neuropathy of the upper and lower extremities, a bulging/herniated disc, depression, anxiety, arthritis, bursitis and bone spurs of the shoulder, use of a cane or walker, psoriasis, chronic pain syndrome, severe allergies, back problems, temporomandibular joint issues, and fibromyalgia. (R. 412.) Plaintiff's applications were denied both initially and on reconsideration. (R. 10.)

After a hearing on November 13, 2019, an ALJ found that Plaintiff was not disabled. (R. 10, 22.) The Social Security Administration's Appeals Council denied review of the ALJ's decision (R. 1), making the ALJ's unfavorable decision a final agency action for purposes of judicial review, which Plaintiff timely sought in this Court.

On March 31, 2022, Magistrate Judge Tony Leung reversed and remanded for further proceedings. (R. 1970.) Of relevance to the present appeal, Magistrate Judge Leung noted that a Social Security claimant's RFC must be assessed after accounting for both severe and non-severe impairments. (R. 1965.) Magistrate Judge Leung did not criticize the ALJ's consideration of Plaintiff's physical impairments but found that Plaintiff's mental impairments—classified by the ALJ as non-severe—had not been considered by the ALJ when analyzing Plaintiff's RFC. (R. 1966) (finding that "the ALJ

provided hardly any discussion of Plaintiff's mental impairments."). Therefore, Magistrate Judge Leung remanded for "consideration of what limitations or restrictions, if any, are imposed by Plaintiff's non-severe mental impairments in the assessment of her residual functional capacity at step four." (R. 1968.)

After the first ALJ decision, but before Magistrate Judge Leung ordered remand, Plaintiff was hospitalized between November 2021 and February 2022 for numerous severe sequelae of COVID-19, including COVID pneumonia, chronic respiratory failure with hypoxia, long COVID with chronic dyspnea, and post-COVID chronic dyspnea. (R. 1787.) These new facts were not known to Magistrate Judge Leung because the administrative record before him ended with the Appeals Council's decision, which preceded Plaintiff's COVID hospitalization.

The same ALJ who had presided at Plaintiff's November 13, 2019 hearing was assigned Plaintiff's case on remand and convened two hearings in response to Magistrate Judge Leung's order. (R. 1784.) The first hearing was held on March 2, 2023. (*Id.*) The second hearing was held on August 31, 2023, at Plaintiff's request, for the limited purpose of addressing an interrogatory response submitted by the vocational expert after the conclusion of the first hearing. (*Id.*) The ALJ issued a partially favorable decision on November 1, 2023, finding that although Plaintiff was not disabled before November 15, 2021, her hospitalization on that date for the COVID-related health issues described above rendered her disabled. (R. 1780.) The ALJ further found that Plaintiff had remained disabled ever since November 15, 2021. (*Id.*) The ALJ did not premise his finding that

Plaintiff was disabled after November 15, 2021 on any of Plaintiff's claimed mental health impairments. (*See* R. 1787, 1790–97.)

Plaintiff appealed to this Court again, contending that the ALJ had not adequately factored her non-severe mental impairments into the RFC analysis. (*Karin R. v. O'Malley*, 24-cv-0004 (LIB), Pl.'s Br. [Doc. No. 13] at 1.) Rather than filing a responsive brief in that appeal, the Commissioner conceded error and moved to remand the case for further proceedings. (R. 6820-21.) On August 1, 2024, Magistrate Judge Leo I. Brisbois granted the Commissioner's motion to remand. (R. 6824.)[4]

On remand, the Social Security Administration's Appeals Council ordered a new hearing before a different ALJ, explaining that "[t]he hearing decision did not adequately comply with the district court's directive to consider the combined effects of the claimant's severe and nonsevere impairments" because "the rationale supporting [the RFC] did not address the mental impairments, and thus did not explain how, if at all, they were accounted for in [the RFC]." (R. 6829, 6830.) The Appeals Council directed the new ALJ "to further evaluate the claimant's mental impairments and resulting limitations and to develop the record with a psychiatric medical expert to provide evidence supporting the findings in this regard." (R. 6830.) The Appeals Council also made clear that the newly assigned ALJ was only to consider the period before November 15, 2021; the finding of disability beginning on that date and continuing to the present was left

[4] The appeal in 24-cv-0004 included other grounds of asserted error which are not before this Court on this appeal.

undisturbed by the Appeals Council, and the ALJ placed those directions on the record at the hearing. (R. 6735 ("My charge is to consider whether we should extend benefits back to the onset date, which is in 2015 . . . I'm not going to change the award of benefits in the current period.").)

The ALJ held a hearing on May 16, 2025 (R. 6701) during which the ALJ heard testimony from an expert, Michael Lace, Psy. D.,[5] who assessed the severity of Plaintiff's mental health impairments and answered questions from Plaintiff's counsel about the potential for Plaintiff's chronic pain to aggravate those mental health impairments and cause excessive absenteeism.

Following the hearing, on May 28, 2025 (R. 6717), the ALJ issued an unfavorable opinion finding that Plaintiff was not disabled before November 15, 2021. In making this determination, the ALJ followed the familiar, five-step, sequential analysis described in 20 C.F.R. § 416.920.[6] Among his findings, the ALJ found that Dr. Lace's statement that Plaintiff could be absent from work for up to three days per month was not supported. (R. 6714.) This appeal followed.

---

[5] Dr. Lace holds a doctoral degree in psychology. His *curriculum vitae* is at R. 7381-85.

[6] The five steps are "(1) whether claimant is engaged in substantial gainful activity, (2) whether claimant has a severe impairment, (3) whether the impairment meets or exceeds the severity of a listed impairment, (4) whether claimant has the residual functional capacity to perform past relevant work activity, and (5) if claimant is unable to do past work, whether claimant can perform other work." *Delph v. Astrue*, 538 F.3d 940, 946 (8th Cir. 2008) (citing *Smith v. Shalala*, 987 F. 2d 1371, 1373 (8th Cir. 1993)). Plaintiff has the burden of proof on steps one through four. The Commissioner has a limited burden at step five of showing that work that Plaintiff can perform exists in sufficient numbers in the national economy.

The ALJ first determined that the Plaintiff was not presently engaged in substantial gainful activity and had not done so since October 1, 2015, the date she alleged she became disabled. (R. 6704.) "Substantial gainful activity" is work involving substantial physical mental or physical activity that is done for pay or profit, 20 C.F.R. § 404.1572. Since Plaintiff was not engaged in substantial gainful activity, the ALJ proceeded to step two, and determined that Plaintiff had the severe impairments of fibromyalgia, asthma, cervical and lumbar spine degenerative disc disease, left wrist fracture with reduction and fixation surgery, bilateral carpal tunnel syndrome, major depressive disorder (recurrent), adjustment disorder with anxiety and depression, chronic pain disorder, factitious disorder, and personality disorder with borderline features. (*Id.*) The ALJ also found that Plaintiff also had non-severe physical impairments that are not at issue here. (*Id.*)

If a claimant has a severe impairment, the ALJ must decide at step three whether that impairment (or combination of impairments) meets or equals the severity of one of the impairments described in the so-called "listings," 20 C.F.R. Part 404, Subpart P, App. 1. *See* 20 C.F.R. § 404.1520(d). If a claimant's impairment equals or exceeds the severity of a listed impairment, a finding of disability is directed, but if it does not, before proceeding to step four, the ALJ must determine the claimant's RFC. 20 C.F.R. § 416.945(a)(1). The claimant's RFC is a measure of "the most you can still do despite your limitations." *Id.* The ALJ found that none of Plaintiff's impairments, alone or in combination, met or exceeded the severity of a listed impairment. (R. 6714.) The ALJ therefore proceeded to analyze Plaintiff's RFC.

At the hearing, Dr. Lace provided testimony that was relevant to the RFC determination. He testified that Plaintiff suffered from the mental health impairments of a severe depressive disorder of recurrent moderate severity; an adjustment disorder with features of both anxiety and depression; chronic pain syndrome[7]; factitious disorder; and an unspecified personality disorder with both borderline and histrionic features. (R. 6738–39.) Although none of these impairments equaled the severity of a listed impairment, they were severe impairments, and Dr. Lace testified that they would cause Plaintiff "some very significant limitations." (R. 6739.)

Dr. Lace then testified that "in terms of chronic pain sometimes exacerbating mental health symptoms and some of that is really unpredictable, quite frankly. And obviously if there's a—a day, or a week, or a month where there's chronic pain that's, you know, really severe and precluding, you know, being able to focus adequately and so forth. There would be some missing of—of some—some work regardless of the accommodations." (*Id.*) The ALJ asked Dr. Lace whether he could quantify Plaintiff's "rate of absenteeism given these mental health impairments," to which Dr. Lace answered "[n]ot—not really . . . I would say that there would be some. I'm not . . . able to really quantify it though, Your Honor." (R. 6740.)

When questioned by Plaintiff's lawyer, Dr. Lace reiterated his uncertainty about quantifying Plaintiff's absenteeism. (*Id.*) After acknowledging that Dr. Lace had said he

[7] Although Dr. Lace included chronic pain syndrome in a recitation of mental health impairments, he clarified that this was "amid a myriad of *medical* problems." (R. 6738) (emphasis added).

could not quantify the absenteeism rate, counsel nevertheless asked whether Dr. Lace could "stipulate" that "it would be between one and three days at a minimum?" (*Id.*) Dr. Lace responded "I'd say that *that would be possible*. But that's as far as I think I could go on that." (*Id.*) (emphasis added).

In assessing Dr. Lace's testimony, the ALJ found that Dr. Lace's opinion supported the conclusion that Plaintiff had "moderate level impairment in the broad areas of mental functioning. . . ." (R. 6714), but found unpersuasive the "portion of the testimony of Dr. Lace that the claimant could possibly miss up to three days of work per month. . . ." (*Id.*) The ALJ explained that "[t]here was no evidence of the severity of chronic pain complaints, findings, or other objective evidence" to support this absenteeism estimate, and therefore he determined Plaintiff's RFC as follows, without reference to any absenteeism caused by aggravation of mental health impairments by chronic pain:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting for unlimited, standing and/or walking 7 hours in an 8 hour day, but no more than 2 hours standing at a time; walk 5 hours in an[] 8 hour day, but no more than 1 hour walking at a time; and push and/or pull as much as [she] can lift and/or carry. The claimant can frequent[ly] bilateral reach, handle, feel, and finger; can climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; balance stoop, kneel and crouch occasionally but never crawl. The claimant can never have proximity to moving mechanical parts, drive or operate machines or equipment, and no commercial driving. The claimant has exposure to [sic] atmospheric conditions that are indoor work that are well ventilated, HVAC controlled settings; and no indoor or outdoor work requiring direct exposure to concentrated sources of pulmonary irritants. The claimant can never be exposed to extreme cold or extreme heat. The claimant can understand, remember, and carry out simple instructions and perform simple routine repetitive work but no assembly line work or other work similarly requiring a specific production rate pace. The claimant is able to interact occasionally with supervisors, coworkers, and the public. Can

> respond appropriately to supervision, coworkers, and usual work situations involving occasional but superficial contact with others. Superficial contacts are those that involve simply exchanging information or taking directions, without any complex teamwork or other social interaction requiring a code lower than 8 on the people scale of appendix B to the Dictionary of Occupational Titles, 1991 Revised Edition.

(R. 6706–07.)

Once an RFC has been determined, the fourth step requires the ALJ to determine whether the claimant's severe impairment prevents the claimant from performing their past relevant work. 20 C.F.R. § 404.1520I. If the claimant can perform their past relevant work despite their impairment, the claim is denied. *Id.* Past relevant work is work that the claimant performed within the past five years and that is substantial gainful activity. 20 C.F.R. § 1520(b). Here, the ALJ found that Plaintiff had past relevant work as a registered nurse, and that she could no longer perform her past relevant work. (R. 6715.)

As is the case here, when a claimant's impairments prevent them from performing their past relevant work, the fifth step requires the ALJ to determine whether the claimant's impairments also prevent the performance of any other work that exists in significant numbers in the national economy, considering RFC, age, education, and work experience. 20 C.F.R. § 404.1520(f). If there is other work that the claimant can perform, the claimant is not disabled, but if there is no other work that the Plaintiff can perform, the Plaintiff is disabled within the meaning of the Social Security Act.

The ALJ found that the Plaintiff could perform the alternate, light, unskilled occupations of merchandise marker (136,000 jobs annually in the national economy), mail sorter (17,600 jobs), or collator operator (41,700 jobs). (R. 6716.) The ALJ therefore

found that Plaintiff was not disabled and not entitled to benefits for any period of disability before November 15, 2021. (*Id.*) This appeal followed.

## II. LEGAL STANDARDS

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden of proving disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB or SSI, the claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A).

When a medical source makes administrative medical findings, the ALJ must consider the persuasiveness of the findings by evaluating the regulatory factors of supportability, consistency, relationship with the claimant, specialization, and any other relevant considerations. 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). The two most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed." *Svendsen v. Kijakazi,* No. 1:21-CV-1029-CBK, 2022 WL 2753163, at *8 (D.S.D. July 14, 2022). The ALJ "may, but [is] not required to," explain how the remaining factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

An ALJ assesses supportability by analyzing how well the medical source's findings are justified by that source's use of objective medical evidence. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Simply put, the more objective evidence a medical source relies upon to support the findings, the more persuasive the findings are.

An ALJ assesses consistency by considering that "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical

sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). That is, the ALJ evaluates whether medical opinion is consistent with evidence from sources other than the source who rendered the opinion.

In other words, supportability depends upon how well the medical source justifies their own opinion with evidence from the record, and consistency depends upon how well the medical source's opinion fits with other sources from the record.

The ALJ must not merely consider the regulatory factors, but must also articulate that consideration. *See* 20 C.F.R. § 416.920c(a) ("We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section."); 20 C.F.R. § 404.1520c(a) (same); 20 C.F.R. § 416.920c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."); 20 C.F.R. § 404.1520c(b) (same). Given the importance of supportability and consistency to the persuasiveness determination, an ALJ "will explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings." 20 C.F.R. § 416.920c(b)(2) (emphasis added); *see* 20 C.F.R. § 404.1520c(b)(2). The ALJ's failure to articulate how he or she considered the consistency factor or the supportability factor is a legal error that warrants remand. *Susan H. v. Kijakazi*, No. 21-CV-2688 (ECT/ECW), 2023 WL 2142786, at *3 (D. Minn. Feb. 21, 2023); *Michael B. v. Kijakazi*, No. 21-CV-1043 (NEB/LIB), 2022 WL 4463901, at *2 (D. Minn. Sept. 26, 2022); *Joel M. B. v. Kijakazi*, No. 21-CV-1660 (PAM/ECW), 2022 WL

1785224, at *3 (D. Minn. June 1, 2022) (citing *Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020)).

## III. DISCUSSION

The ALJ's finding that Dr. Lace's testimony about absenteeism was not persuasive is supported by the record in this case. Plaintiff asserts that medical sources found a connection between the severity of her mental health impairments and her chronic pain, (Pl.'s Br. at 12), but a closer examination of the portions of the record relied upon by Plaintiff shows that while a medical source may have discussed chronic pain and mental health in the same document (such as treatment notes), these medical sources do not attribute Plaintiff's mental impairments to chronic pain, let alone opine on any related absenteeism. (*See, e.g.*, R. 729 (listing as problems "personality disorder, unspecified," and "chronic pain syndrome"); 1570 (same); 1476 (noting a discussion regarding Plaintiff's "multifocal pain complaints, given her constellation of underlying medical and immune conditions," that it "can be difficult to manage all symptoms combined," and stating that plaintiff "is significantly functionally limited.").

Plaintiff also claims that the ALJ did not adequately articulate his consideration of the supportability and consistency factors as applied to Dr. Lace's opinion, (Pl.'s Br. at 24–28; Pl.'s Reply at 1–3), but the Court disagrees. Even with the benefit of the voluminous administrative record that he reviewed in preparation for his testimony (R. 6737), Dr. Lace declined to quantify the rate of absenteeism. (R. 6740.) Only when asked by Plaintiff's counsel to "stipulate" to a rate of absenteeism of one to three days per month did Dr. Lace speculate that such absenteeism "would be possible." (*Id.*) The ALJ's rejection of Dr.

Lace's attempt to quantify absenteeism is supported by and consistent with the record as a whole, as the Court discusses below.

### A. The Record Evidence Does Not Clearly Document a Connection Between Plaintiff's Chronic Pain and the Specific Mental Health Impairments She Was Found to Have, Along With an Effect on Absenteeism.

The ALJ's finding that Dr. Lace's absenteeism opinion was unpersuasive is supported by substantial evidence. To reiterate, an impairment must be proven—by the Plaintiff, who bears the burden of proof on this issue—by objective medical evidence from a medically acceptable source. 20 C.F.R. § 404.1521.

Plaintiff quotes extensively from the treatment notes of her visits to health care providers in support of her argument that she has chronic pain and that this chronic pain exacerbates her mental health impairments. (Pl.'s Br. at 11–18.) However, these excerpts do not clearly establish that connection.

For example, Plaintiff asserts that in May 2017, psychologist Todd Heggestad[8] "linked Plaintiff's pain, depression, and anxiety." (*Id.* at 12.) However, the cited treatment note was not written by Mr. Heggestad but by Rachel Scharfenberg, an Advanced Nurse Practitioner working in Essentia Health's Pain Management Program. (R. 1045.) In the psychological history portion of the treatment note, Ms. Scharfenberg stated, "Please refer to pain psychologist Todd Heggestad's note in Epic for further review. She does note the link between pain, depression, and anxiety. She notes grief and loss as it relates to her

[8] Todd Heggestad is a licensed psychologist who holds a master's degree. (*See, e.g.*, R. 1295 (treatment note signed by "Todd Heggestad, MS, LP.").) Although Plaintiff refers to him by the title "Dr.," the Court will refer to him as "Mr. Heggestad."

marriage and loss of her career and some financial losses as well." (R. 1047.) Plaintiff does not identify the specific reference to Mr. Heggestad's Epic note in the administrative record. Moreover, in the second and third sentences, Ms. Scharfenberg referred to "she" (Plaintiff) "not[ing] the link between pain, depression, and anxiety." (*Id.*) In other words, the quote that Plaintiff relies upon is not attributable to Mr. Heggestad, but is from Plaintiff herself.

On July 10, 2018, Plaintiff was evaluated by Mr. Heggestad, who noted, as Plaintiff points out, that Plaintiff said during her evaluation that she had issues with pain. (R. 1292.) Mr. Heggestad classified her reports of pain as stressors, and included pain in his catalogue of other stressors in Plaintiff's life, along with issues involving her children and "an ex-husband that tends to be somewhat intrusive in her life." (R. 1293.) At the conclusion of the appointment, Mr. Heggestad listed four objectives for Plaintiff to work toward, only one of which was gaining facility with various pain-coping techniques. (R. 1294.) The others were learning to talk about past issues in a way that resolves them; increasing her activity level and getting better sleep; and learning to cope with relationships in a healthy manner. (*Id.*)

On July 26, 2018, Plaintiff was seen in the rheumatology service of Essentia Health in Duluth, Minnesota, for a follow-up psoriasis appointment, after she had suffered an episode of severe pain after her "RFA injections wore off." (R. 1326.) The pain had become severe enough that she phoned a suicide prevention hotline "just to talk to someone." (R. 1327.) Notwithstanding the call to the suicide prevention hotline, Plaintiff presented as "pleasant and cooperative, in no distress," with an "overall global assessment"

of "good." (R. 1327, 1330.) No nexus between chronic pain and mental health issues was documented. (R. 1327.) Plaintiff's psoriasis medication was continued, with instructions to return in six months. (R. 1331.)

Plaintiff treated with Mr. Heggestad the following day, reporting inconsistent sleep. (R. 1338.) He recommended that she continue therapy. (*Id.*)

Plaintiff saw Mr. Heggestad again on September 28, 2020 and reported significant pain relief following neck surgery. (R. 5906.) She also reported pain issues in other parts of her body, and she felt unsupported. (*Id.*) Mr. Heggestad recommended deep breathing, muscle relaxation, and other mind-body techniques. (*Id.*) Mr. Heggestad did not state that Plaintiff's mental health was affected by her pain. (*Id.*) Nor did Mr. Heggestad document a connection between her mental health impairments and pain on October 6, 2020, when he wrote in his treatment notes that Plaintiff would continue to be seen for ongoing psychotherapy support in dealing with physical pain. (R. 5890.)

None of the treatment notes cited by Plaintiff's counsel in her brief contain any discussion of her chronic pain exacerbating her mental health impairments, much less of absenteeism from work for one to three days per month as a result of that exacerbation.[9] If

---

[9] Plaintiff cites *Baker v. Apfel*, 159 F. 3d 1140, 1146 (8th Cir. 1998) for the proposition that "[w]hen excessive absenteeism is caused by a claimant's impairment(s), a claimant 'is entitled to have it considered by the vocational expert.'" However, the record of this case did not establish excessive absenteeism evidence for the vocational expert to consider. By contrast, the plaintiff in *Baker* identified record evidence that he had been absent from work close to 60 times in an eight-month period due to his impairments. The Eighth Circuit described this evidence of excessive absenteeism as "uncontroverted" and noted that "[t]he ALJ failed to consider the plain fact that if a person is in the doctor's office or an emergency room receiving injections of Demerol, he is not at the workplace . . . ." *Baker*, 159 F. 3d

the Court, confronting a lack of medical and psychological evidence, attempts to fill the gap with its own speculation, the Court is simply reweighing the evidence, which it cannot do. *Austin v. Kijakazi*, 52 F.4th 723, 731 (8th Cir. 2022). The ALJ's finding that an absenteeism opinion was not persuasive is therefore supported by substantial evidence on the record as a whole.

**B. Consistency and Supportability Requirements of the Social Security Regulations**

Plaintiff's criticism of the ALJ for not properly addressing the consistency and supportability requirements of the regulations also fails. Plaintiff is correct that an ALJ must analyze the supportability and consistency of an expert's opinion. However, as an initial matter, Plaintiff does not address the question of whether a medical expert's statement that there is insufficient evidence from which to form an opinion must also be supportable and consistent. Contrary to Plaintiff's assertions, Dr. Lace did not expressly opine that Plaintiff would miss one to three days of work per month because her chronic pain would exacerbate her mental health impairments. Rather, in response to a question from Plaintiff's counsel ("would you be able to stipulate if it would be between one and three days at a minimum?" R. 6740), Dr. Lace speculated, "I'd say that would be possible. But that's as far as I think I could go on that." (*Id.*)

Even construing Dr. Lace's testimony as an express opinion that Plaintiff would miss up to three days a month, the ALJ's determination that the opinion was unpersuasive

---

at 1146. Plaintiff does not identify similar evidence of excessive absenteeism caused by her impairments in the record of this case.

is supported by the record, for several reasons. First of all, Dr. Lace himself acknowledged that he did not have faith in the opinion. Chronic pain was "a wild card," it was "really unpredictable," and all he would say about absenteeism of up to three days per month was that it was "possible." (R. 6739–40.)

Second, while Plaintiff argues that the ALJ failed to address the supportability of record evidence on which Dr. Lace's opinion relied (Pl.'s Br. at 24–25; Pl.'s Reply at 2–3), the Court disagrees. The ALJ found no evidence of sufficient severity to support a finding of absenteeism of up to three days of work per month. (R. 6714.) In his decision, the ALJ recounted Plaintiff's complicated medical history, including Exhibits 2F, 10F, and 11F, on which Dr. Lace relied. (R. 6709–10.) Plaintiff identifies portions of these medical records, but they consist of treatment notes that simply list both mental health diagnoses and physical diagnoses (*see, e.g.,* R. 729, 1570), or acknowledge that Plaintiff suffers from "a constellation of underlying medical and immune conditions," (R. 1476), or note Plaintiff's self-report linking her pain, depression, and anxiety. (R. 1047.)

Third, as to consistency with other sources in the record, Plaintiff argues that the ALJ failed to address this factor altogether. (Pl.'s Br. at 26; Pl.'s Reply at 2–3.) While the ALJ may not have used the word "consistency" when evaluating Dr. Lace's testimony on absenteeism, no such magic words are necessary as long as the factor is addressed. *Svendsen* 2022 WL 2753163, at *8. Again, the ALJ noted the absence of support in the medical record for pain of such severity that would lead to up to three days of work place absences per month. (R. 6714.) Also, as the Commissioner points out in his brief, Plaintiff's performance of the activities of daily life, addressed by the ALJ, undermined

her statements about the severity of her chronic pain. (Def.'s Br. at 8-9.) The ALJ found that Plaintiff functioned at a higher physical level than she alleged, stating, "During the period [at] issue[,] the claimant indicated she drove, shopped, cared for numerous animals, cleaned out animal cages, did household projects, and complained about how much she was caring [for] a very young grandchild." (R. 6713). In addition, the ALJ specifically noted that Plaintiff reported improvement with physical therapy and behavior therapy, and psychotropic medication provided some stability and improvement. (*Id.*)

Thus, the Court finds that the ALJ did not improperly evaluate the persuasiveness of Dr. Lace's opinion. Substantial evidence supports his conclusions. As such, he did not err in the decisions that flowed from his evaluation of Dr. Lace's opinion—determining Plaintiff's RFC and finding her not disabled for the period in question. "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Nash*, 907 F.3d at 1089. Accordingly, for all of these reasons, the ALJ's finding that Dr. Lace's opinion on absenteeism was unpersuasive is supported by substantial evidence on the record as a whole.

## IV. ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The relief sought in Plaintiff's Brief (Doc. No. 21), seeking remand or reversal of the Commissioner's decision to deny her Social Security Disability Benefits

and Supplemental Security Benefits for the period October 1, 2015 through November 15, 2021, is **DENIED**;

2. The relief sought in Defendant Commissioner of Social Security Administration Frank Bisignano's Brief in Opposition [Doc. No. 23], requesting that the Court affirm the Commissioner's decision, is **GRANTED**; and

3. Plaintiff's Complaint [Doc. No. 1] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Date: September 21, 2026

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge